O

# United States District Court
# Central District of California

| | |
|---|---|
| ANKIT KUMAR,<br><br>                Petitioner,<br><br>    v.<br><br>ERNESTO SANTACRUZ JR. et al.,<br><br>                Respondents. | Case № 5:26-cv-00297-ODW (SSCx)<br><br>**ORDER GRANTING *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [3]** |

## I. INTRODUCTION

Petitioner Ankit Kumar moves *ex parte* for a temporary restraining order requiring his immediate release from custody or an individualized bond hearing before an immigration judge ("IJ"). (Ex Parte Appl. ("TRO") 3, Dkt. No. 3-2.). Kumar also requests that the Court enjoin Respondents from transferring him outside of this District pending the Court's final adjudication of this matter. (*Id.* at 3–4.) Respondents failed to respond.[1] For the reasons discussed below, the Court **GRANTS** Kumar's TRO.

---

[1] On January 23, 2026, Kumar served Respondents with the TRO. (Proof Service, Dkt. No. 5.) This Court's Rules provide that opposing papers to a noticed ex parte application where the opposing party has not previously appeared "must be filed no later than 48 hours following service." *See* Hon. Otis D. Wright, II Standing Order § VII.C., https://www.cacd.uscourts.gov/honorable-otis-d-wright-ii. Thus, Respondents had until January 25, 2026, to respond to the TRO. They failed to do so.

## II. BACKGROUND[2]

Kumar is a citizen and national of India. (Pet. ¶ 7, Dkt. No. 1.) Kumar fled India after facing physical abuse and persecution for speaking out against the Indian government. (TRO 4.) On or around March 20, 2022, Kumar entered the United States without inspection. (Pet. ¶ 8.) Respondents placed Kumar in formal removal proceedings but conditionally released him. (*Id.*) Since his release, Kumar has complied with the conditions of his release. (*Id.*) Kumar also filed an application for asylum and for protection under the Convention Against Torture. (*Id.*) Kumar has no criminal history nor any history of violence. (*Id.* ¶ 7.)

On December 11, 2025, the Department of Homeland Security ("DHS") detained Kumar at a truck stop in Ontario, California. (*Id.* ¶ 9.) Respondents did not provide Kumar with written notice explaining the basis for this detention. (*Id.* ¶ 10.) Kumar is now detained at the Desert View Annex in Adelanto, California. (*Id.* ¶ 11.)

Kumar is subject to an order of removal detention under 8 U.S.C. § 1226(a). (*Id.* ¶ 3.) Noncitizens detained under § 1226(a) are subject to discretionary detention and may request a bond hearing before an IJ. (*Id.*) However, pursuant to a new DHS "Interim Guidance" ("New Policy"), "noncitizens like [Kumar] who entered the United States without permission or parole are subject to mandatory detention under 8 U.S.C. § 1225(b) instead of discretionary detention under [§] 1226(a)." (*Id.*) On September 5, 2025, the Board of Immigration Appeals ("BIA") issued a decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) adopting DHS's interpretation. (*Id.*) As a result, DHS considers all noncitizens who entered the United States without inspection, including Kumar, subject to mandatory detention

---

[2] There are several inconsistencies in Kumar's papers. For example, despite filing this TRO in the Central District, he asks the Court to enjoin Respondents "from relocating him outside of the Eastern District of California," then asks the Court to enjoin Respondents from removing him "from the California area," generally. (TRO 4–5.) Moreover, in his Petition, Kumar states he "fled physical abuse and political prosecution in *China*," (Pet. ¶ 7), while in his TRO, he states he "fled *India* after facing physical abuse and persecution by the Indian government," (TRO 4). As Kumar is an Indian citizen, the Court assumes that the latter assertion is correct. Regardless, the Court admonishes Kumar's counsel that it is his duty to carefully proof any papers he files with the Court.

under § 1225(b) and ineligible for release on bond.  (*Id.* ¶ 4.)  Kumar is thus detained without the ability to obtain a bond hearing before an IJ.  (*Id.* ¶¶ 4–5.)

Based on these allegations, on January 23, 2026, Kumar filed a Petition for Writ of Habeas Corpus on the grounds that his detention is unlawful and violates his Fifth Amendment right to due process and § 1226(a).  (*Id.* ¶¶ 36–50.)  That same day, Kumar filed this Motion for a Temporary Restraining Order.  (TRO.)  Kumar seeks an order (1) requiring Respondents to release him or provide him with a bond hearing before an IJ, and (2) enjoining Respondents from relocating him outside this District pending resolution of this case.  (*Id.* at 3–4.)  Respondents failed to timely respond to Kumar's TRO.

### III.  LEGAL STANDARD

A temporary restraining order ("TRO") is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008).  The standard for issuing a TRO is "substantially identical" to that for issuing a preliminary injunction.  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  Pursuant to Federal Rule of Civil Procedure ("Rule") 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury."  Fed. R. Civ. P. 65(b).  To obtain this relief, a plaintiff must establish the "*Winter*" factors: (1) the plaintiff "is likely to succeed on the merits"; (2) the plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [the plaintiff's] favor"; and (4) "an injunction is in the public interest."  *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

### IV.  DISCUSSION

The Court briefly addresses its jurisdiction to review Kumar's claims, before turning to the merits of the TRO.

A. **Jurisdiction**

The Court must first consider whether it has jurisdiction to grant the requested relief. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction."). Under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." The Supreme Court has construed § 1252(g) to apply only to those three specified actions, stressing that the statutory aim is to prevent "attempts to impose judicial constraints upon prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 485 n.9 (1999). However, a "district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority." *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004).

Here, Kumar raises a question of law as to whether his mandatory detention during the pendency of his removal proceedings falls under § 1226(a) or § 1225(b)(2). (TRO 5–16.) He does not challenge the Attorney General's discretionary authority to commence, adjudicate, or execute removal proceedings. (*See generally id.*) Moreover, the Court does not review or disturb Kumar's underlying order of removal. Instead, the Court confines its analysis to the narrow legal question properly before it: whether Kumar's detention entitles him to release or an individualized bond hearing. As the Court addresses only the legality of Kumar's detention—not the merits, validity, or execution of his removal order—the Court has jurisdiction to review Kumar's TRO. *Hovsepian*, 359 F.3d at 1155.

B. **Merits of the TRO: *Winter* Factors**

Kumar demonstrates that the *Winter* factors weigh in favor of an injunction.

### 1. *Likelihood of Success on the Merits*

Kumar contends that § 1226(a), not § 1225(b)(2), governs his detention. (TRO 5–16.)

The Court has considered this identical issue in nearly identical factual circumstances and incorporates and adopts by reference its analyses in those recent decisions. *See Garcia v. Noem*, No. 5:25-cv-02771-ODW (PDx), 2025 WL 2986672, at *2–4 (C.D. Cal. Oct. 22, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285, at *2 (C.D. Cal. Aug. 15, 2025); *Gonzalez v. Noem*, No. 5:25-cv-02054-ODW (ADSx), 2025 WL 2633187, at *2–3 (C.D. Cal. Aug. 13, 2025); *Saucedo v. Noem*, No. 2:25-cv-11051-ODW (RAOx) (C.D. Cal. Nov. 20, 2025); *Longoria v. Noem*, No. 5:25-cv-03098-ODW (DFMx), 2025 WL 3302780, at *3 (C.D. Cal. Nov. 25, 2025); *Singh v. Bowen*, No. 5:25-cv-03322-ODW (AGRx), 2025 WL 3552628, at *3 (C.D. Cal. Dec. 11, 2025.) For the reasons stated in those decisions, the Court finds again that the statutory text does not support the notion that § 1225 governs where, as here, an alien is present in the United States without admission. *See Gonzalez*, 2025 WL 2633187, at *4 ("If Respondents are correct that Congress meant for § 1225 to govern all aliens present in the United States who had not been admitted, it would render the exception made under § 1226(c)(1)(E) unnecessary." (internal quotation marks omitted)). To the contrary, the plain text actually supports Kumar's argument that § 1226(a) applies to his detention. (TRO 5–13); *see Arrazola-Gonzalez*, 2025 WL 2379285, at *2 ("[Section 1226] 'applies to aliens already present in the United States.'" (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018))).

As in prior cases presenting these circumstances, the Court finds here that Kumar shows a likelihood of success on the merits of his claim that § 1226(a), not § 1225, governs his detention.

### 2. *Likelihood of Irreparable Harm*

Kumar contends that he will suffer irreparable harm in the absence of a TRO as he will continue to be unlawfully detained without a bond hearing. (TRO 21.)

The harm resulting from Kumar's continued detention is the deprivation of his right to a bond hearing and due process. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (noting that "[f]reedom from imprisonment . . . lies at the heart of the liberty" that the Due Process Clause protects); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))). The Court finds that Kumar's continued detention without a bond hearing causes, and will continue to cause, immediate and irreparable injury.

### 3. *Balance of Equities and Public Interest*

The last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Kumar argues that these factors "weigh heavily" in his favor because "the policy preventing [him] from obtaining bond is 'inconsistent with federal law.'" (TRO 21–22 (quoting *Moreno Galvez v. Cuccinelli*, 387 F. Supp. 3d 1208, 1218 (W.D. Wash. 2019)).)

The Court agrees. As the Court has previously expressed, "to the extent that the BIA's adopted statutory interpretation deprives [Kumar] of [his] constitutional rights and violates federal law, 'it is clear that neither equity nor the public's interest are furthered by allowing violations of federal law to continue.'" *Gonzalez*, 2025 WL 2633187, at *6 (quoting *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022)). Accordingly, the balance of equities and the public interest factors also favor injunctive relief.

## V. CONCLUSION

For the reasons discussed above, the Court finds that all four *Winter* factors weigh in favor of a TRO. Accordingly, the Court **GRANTS** the TRO. (Dkt. No. 3.) It is hereby **ORDERED** that:

- Respondents shall release Kumar or, in the alternative, provide him with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) **within seven (7) days** of this Order;
- Respondents are enjoined from relocating Kumar outside of the Central District of California pending final resolution of this case; and
- Respondents shall **SHOW CAUSE**, in writing only, to be received by the Court no later than **February 3, 2026, at 12:00 p.m.**, as to why the Court should not issue a preliminary injunction in this case. Kumar may file a reply by **February 6, 2026, at 12:00 p.m**. The Court **SETS** a hearing on the preliminary injunction on **February 10, 2026, at 9:00 a.m.**, via Zoom.

**IT IS SO ORDERED.**

January 26, 2026

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**